UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LLOYD RAYMOND MARTIN, III, ET AL.                    CIVIL ACTION

VERSUS                                              NO: 10-2786

WILLIAM M. MAGEE, ET AL.                            SECTION: R(4)

**ORDER AND REASONS**

In this case under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, numerous defendants move to dismiss.[1]  Additionally, plaintiffs Lloyd and Nicole Martin and Carol Robinson move to amend the complaint.[2] Because plaintiffs (1) have not adequately alleged that defendants Mark and Kristen Graziani violated RICO, and (2) have not adequately alleged that their injuries were proximately caused by the remaining defendants' activities, the Court GRANTS

---

[1]      R. Doc. 27, 29, 32, 34, 35, 51, 55, 57.

[2]      R. Doc. 83.

defendants' motions to dismiss, DENIES plaintiffs' motion to amend the complaint, and STRIKES the second amended complaint.

**I.  Background**

*A.  Factual Background*

This case involves an alleged scheme by defendants, led by William Magee, to obtain numerous properties by filing fraudulent actions in state court based on false quitclaim deeds.  After the properties changed hands multiple times, the Martins eventually bought one of these properties, and Carol Robinson bought another.  Plaintiffs assert that they have been injured by defendants' scheme because their title to the properties is defective.

In their complaint and RICO case statement, plaintiffs allege that defendants fraudulently obtained fifteen separate properties under this scheme.  For purposes of this background, the Court will focus on the alleged scheme as it relates to the properties owned by plaintiffs.  At this motion to dismiss stage, the Court will assume the truth of plaintiffs' plausible factual allegations.

i.  <u>Martin Property</u>

The property where the Martins currently reside (the "Martin Property") is located in the Town of Abita Springs in St. Tammany Parish, Louisiana.  On February 14, 2001, defendant Hickory Glade Inc. conveyed by quitclaim deed any interest it had in a larger parcel that includes the Martin Property to defendant William Magee in exchange for ten dollars.  Hickory Glade is a Louisiana corporation created by William Magee, and its officers are defendants William Magee, Karen Magee, and Timothy Dunaway. According to plaintiffs, the record owner of that larger parcel (the "Nill Property") at the time of the February 14, 2001 conveyance was William C. Nill, who bought it on May 6, 1959. Plaintiffs assert that Hickory Glade had no ownership interest in the Nill Property at that time.  Thus, according to plaintiffs, Magee essentially used a quitclaim deed to transfer a nonexistent interest in the Nill Property to himself.

On April 9, 2002, Magee filed a petition for declaratory judgment in the 22nd Judicial District Court of Louisiana.  In that petition, Magee alleged that he had been in possession of the Nill Property for one year.  Magee asked the court to recognize his ownership of the property if the absent Nill defendants did not file a petitory action asserting any adverse claim of ownership within thirty days.  The court appointed defendant Salvador Liberto as curator to represent the absent

owner, but plaintiffs allege that Liberto did not contact William Nill's heirs.  The state court granted a default judgment to Magee on September 13, 2002.

In March of 2004, Magee conveyed the property to Matthew Organ, who conveyed the property back to Magee in April of that year.  Then, on April 28, 2005, Magee donated a 26.5 percent interest in the portion of the Nill Property containing the Martin Property to the Great Commission Foundation of Campus Crusade for Christ, Inc.  Magee and the Great Commission sold that parcel to Buddy Coate, L.L.C. (or a related Buddy Coate entity) on May 25, 2005.  On August 16, 2005, Buddy Coate, represented by Magee, filed a petition for declaratory judgment and to quiet title in the 22nd Judicial District Court requesting that the court recognize its right to possess the property.  The state court granted default judgment to Buddy Coate on December 20, 2005.

Buddy Coate built homes on the property and then sold the individual lots.  On October 13, 2005, Buddy Coate sold the Martin Property to Mark and Kristen Graziani with full warranty of title.  Then, on January 31, 2007, the Grazianis sold the property to the Martins with full warranty of title.  On that date, the Martins also obtained title insurance on the property from Fidelity National Title Insurance Company, Inc.

4

In December of 2008, the Martins were preparing to sell the property when they were informed by the closing agent for the purchaser that there was a problem with the title.  The Martins were unable to sell the property, and they still own it today.

### ii.  Robinson Property

The property where Carol Robinson resides (the "Robinson Property") is also a part of the Nill Property and was subject to the February 14, 2001 quitclaim deed and the September 13, 2002 state court judgment in favor of Magee.  The Robinson Property is located in a portion of the Nill Property that Magee donated in full to the Great Commission, which then sold the property to Scoggin Homes, Inc. on June 4, 2004.  Scoggin built homes on the property and sold the Robinson Property to Frank and Tonia Costa on October 6, 2005.  On May 5, 2008, the Costas sold the property to Carol Robinson, who owns it today.

### iii. Other Properties

Plaintiffs also allege that defendants fraudulently obtained or attempted to obtain thirteen other properties under this scheme.  Each property follows the same general pattern, but the defendants did not always play the same roles.  According to plaintiffs, Hickory Glade conveyed many of the properties by

quitclaim deed to other participants in the scheme.  William
Magee and Landmark Properties, acting through its officer Glynn
Dykes, both sold and obtained properties using quitclaim deeds
under the alleged scheme.  Acquisitive Prescription, LLC, now
known as A.P.-St. Tammany, LLC and co-owned by William Magee and
Glynn Dykes, allegedly obtained properties in this manner as
well.  Plaintiffs also allege that Karen Magee fraudulently sold
one property to William Magee and obtained another property under
the scheme.  Salvador Liberto was appointed curator for most of
the properties and allegedly failed to contact the record owners.
Phillip Lynch was the curator for one property and allegedly
acquired another property as well.  Additionally, Mary Devereaux,
William Magee's law partner, and Charlene Kazan, a law associate,
allegedly filed petitions and facilitated sales under the scheme.


B.   *Procedural Background*

     Before setting out the procedural history of this RICO case,
it is necessary to have an understanding of two related cases
that are also before this Court.  On June 29, 2009, the Martins
sued Fidelity National Title Insurance Company (Case No. 09-
4195).  In that case, the Martins allege that Fidelity breached
the title insurance policy it issued to them and, in doing so,
violated certain Louisiana statutes.  Fidelity then filed a

third-party complaint against William Magee, the Great
Commission, the Buddy Coate entities, James Coate, and the
Grazianis.[3]  Fidelity alleges that to the extent it is liable to
plaintiffs under the title insurance policy, the third-party
defendants are liable to Fidelity for breach of warranty of title
and warranty against eviction.  The Grazianis then filed a cross-
claim against the other third-party defendants on the same
grounds.[4]  Judge Mary Ann Lemmon dismissed the case for failure
to meet the amount in controversy requirement on August 18,
2010,[5] but then vacated that order on November 10, 2010.[6]  In the
meantime, the Martins filed another action against Fidelity and
its officer Ronald Wood (Case No. 10-3595), but that case has
been dormant since Judge Lemmon vacated the dismissal in the
original action.

Returning to the original action against Fidelity, on
December 15, 2010, Judge Lemmon denied a motion for summary
judgment filed by William Magee, James Coate, and the Buddy Coate

---

[3]     Case No. 09-4195, R. Doc. 8.

[4]     Case No. 09-4195, R. Doc. 24.

[5]     Case No. 09-4195, R. Doc. 85.

[6]     Case No. 09-4195, R. Doc. 97.

7

entities.[7]  The Court held that the third-party claims against those defendants were not foreclosed by the *Rooker-Feldman* doctrine and that there are genuine issues of material fact as to whether the Martins' title to the property is unmerchantable. The Martins have now filed a motion for summary judgment in that case,[8] and that motion is pending.  The case was then transferred to this Section of the Court.[9]

Meanwhile, the Martins and Carol Robinson filed this RICO action on August 19, 2010 against William Magee; his law firm William M. Magee, APLC; Acquisitive Prescription, LLC and its successor A.P.-St. Tammany, LLC; Karen Jean Hokanson Magee; Hickory Glade, Inc.; Timothy K. Dunaway; Mary Devereaux; Salvador Liberto, Jr.; Phillip Lynch, Jr.; Charlene Ory Kazan; Glynn T. Dykes; Landmark Properties of St. Tammany, Inc.; Kimberly Russo Scoggin; Steven W. Scoggin; Scoggin Homes, Inc.; James G. Coate, Jr.; Buddy Coate, LLC; Mark J. Graziani; Kristen Taylor Graziani; John and Jane Doe Public Officials and Private Persons; and XZY Title, Lender, and Other Insurance Companies.[10]  In their

---

[7]    Case No. 09-4195, R. Doc. 105.

[8]    Case No. 09-4195, R. Doc. 111.

[9]    Case No. 09-4195, R. Doc. 126.

[10]   Case No. 10-2786, R. Doc. 1.

complaint and RICO case statement, plaintiffs allege that the defendants committed numerous predicate acts of racketeering and violated 18 U.S.C. § 1962(a), (c), and (d).  The alleged predicate acts include theft, filing of false public records, corrupt influencing of judges, extortion, wire fraud, mail fraud, and tax fraud, among others.  Defendants now move to dismiss on numerous grounds.

## II.  Standard

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949-50.

9

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Id*. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255-57. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n.9 (5th Cir. 2007), the claim must be dismissed.

**III. Discussion**

Defendants argue that plaintiffs' RICO claims must be dismissed on numerous grounds, including the proximate cause requirement for RICO actions. Defendants also contend that the complaint does not adequately allege that they committed predicate acts of racketeering, formed a RICO enterprise, or violated 18 U.S.C. § 1962(a), (c), and (d).

10

RICO claims under section 1962 require, *inter alia*, "1) a person who engages in 2) a pattern of racketeering activity, 3) connected to the acquisition, establishment, conduct or control of an enterprise." *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (quoting *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996)).  To allege a "pattern of racketeering activity," a plaintiff must show that the defendant committed two or more predicate offenses that are (1) related and (2) amount to or pose a threat of continued criminal activity.  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).  Predicate offenses include violations of certain state and federal laws, as set out in 18 U.S.C. § 1961(1).  The enterprise those acts are connected to need not be formal, but may be an association-in-fact built around a common purpose. *Boyle v. United States*, 129 S.Ct. 2237, 2244 (2009).

Plaintiffs allege that defendants violated the RICO provisions of 18 U.S.C. § 1962(a), (c), and (d).  Subsection (a) prohibits any person from investing income derived from a pattern of racketeering activity in an enterprise.  Subsection (c) prohibits any person employed by or associated with an enterprise from conducting or participating in the conduct of the enterprise through a pattern of racketeering activity.  Finally, subsection

(d) prohibits any person from conspiring to violate subsections (a), (b), or (c).

The private cause of action for RICO violations is provided in 18 U.S.C. § 1964(c), which states that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . ."  The Supreme Court has found that the "by reason of" language requires not only that a RICO predicate offense was the "but for" cause of the plaintiff's injury, but also that it was the proximate cause of the injury.  *Hemi Group, LLC v. City of New York*, 130 S.Ct. 983, 989 (2010) (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)) (requiring "some direct relation between the injury asserted and the injurious conduct alleged").

After reviewing the pleadings, the Court finds that plaintiffs have not adequately alleged that the Grazianis committed any predicate acts of racketeering or violated section 1962.  Further, the Court finds that plaintiffs have not adequately alleged proximate causation as to the remaining defendants.  The Court will address these issues in turn.

A.   *Mark and Kristen Graziani*

Plaintiffs allege that after the Grazianis bought the Martin Property, the Grazianis were informed of the defect in their title when they attempted to refinance their mortgage.  The Grazianis allegedly sold the property to the Martins with full warranty of title without revealing that defect.  Further, plaintiffs allege that Mark Graziani steered the closing of the sale to Mahoney Title because he knew that Mahoney Title would not diligently perform the title examination.  Plaintiffs allege that these acts constitute obstruction of justice under 18 U.S.C. § 1503, interference with commerce by threats or violence under 18 U.S.C. § 1951, mail fraud under 18 U.S.C. § 1341, wire fraud under 18 U.S.C. § 1343, and bank fraud under 18 U.S.C. § 1344. As is demonstrated below, plaintiffs have not adequately alleged that the Grazianis committed any such predicate acts, eliminating any liability under the substantive RICO provisions of 18 U.S.C. § 1962(a) and (c).  *See Salinas v. United States*, 522 U.S. 52, 65-66 (1997) (defendant who did not commit two predicate acts cannot be liable under RICO's substantive provisions but may still be liable for conspiracy under section 1962(d)).  Further, plaintiffs have failed to state claims against the Grazianis under section 1962(a), (c), or (d).  Therefore, plaintiffs' claims against the Grazianis must be dismissed.

13

i. Predicate Acts

Plaintiffs have not adequately alleged that the Grazianis committed any predicate acts of racketeering under 18 U.S.C. § 1961(1). First, plaintiffs have not adequately alleged that the Grazianis obstructed justice under 18 U.S.C. § 1503. "Obstruction of justice involves any attempt to impede the due administration of justice." *United States v. Cihak*, 137 F.3d 252, 262 (5th Cir. 1998). For defendants to have obstructed justice, "there must have existed a pending judicial proceeding at the time that defendants acted." *Id.* at 263. Further, defendants must have had specific intent to influence, obstruct, or impede the due administration of justice. *Alwan v. Ashcroft*, 388 F.3d 507, 514 (5th Cir. 2004). Plaintiffs have not alleged that any of these elements are true with respect to the Grazianis, and their bare allegation that the Grazianis obstructed justice is insufficient.

Further, plaintiffs have not adequately alleged that the Grazianis interfered with commerce by threats or violence under the Hobbs Act, 18 U.S.C. § 1951. A defendant violates the Hobbs Act by committing, or attempting or conspiring to commit, "a robbery or act of extortion that caused an interference with interstate commerce." *United States v. Mann*, 493 F.3d 484, 494 (5th Cir. 2007). Plaintiffs have not alleged that the Grazianis

14

committed, or attempted or conspired to commit, any act of robbery or extortion, nor that any such act interfered with interstate commerce.  Plaintiffs merely assert that the Grazianis violated 18 U.S.C. § 1951, which is clearly insufficient.

Additionally, plaintiffs allege that the Grazianis committed wire fraud and mail fraud.  The elements of wire fraud are "(1) a scheme to defraud, and (2) the use of, or causing the use of, wire communications in furtherance of that scheme." *United States v. Rush*, 236 F. App'x 944, 947 (5th Cir. 2007).  "The elements of mail fraud are (1) a scheme to defraud; (2) use of the mails to execute the scheme; and (3) the specific intent on the part of the defendant to defraud." *United States v. Smith*, 46 F. App'x 225, 2002 WL 1939843, at *2 (5th Cir. July 16, 2002). Plaintiffs allege generally that the "named defendants" committed mail and wire fraud by "using the United States Mail" and "the communications systems in conveyance of their falsified documents, public records, and other instruments and by conveyance of false and unlawful pleadings, petitions, motions and requests for judgment."[11]  Plaintiffs do not, however, specify a single wire or mail communication that was an incident to an essential part of the Graziani's alleged scheme.  *See*

---

[11]     R. Doc. 1 at ¶297 & 300.

*Schmuck v. United States*, 489 U.S. 705, 712 (1989) (mailing must be incident to an essential part of the scheme to constitute mail fraud); *Old Time Enterprises, Inc. v. International Coffee Corp.*, 862 F.2d 1213, 1218 (5th Cir. 1989) (dismissing RICO claim when plaintiff did not indicate "the content of the communications or how or in what manner they violated" the mail and wire fraud statutes).  Thus, plaintiffs have not adequately pleaded the elements of mail and wire fraud as to the Grazianis.[12]

Plaintiffs also allege that the Grazianis committed bank fraud under 18 U.S.C. § 1344.  The elements of bank fraud are that the defendant "knowingly executed or attempted to execute a scheme or artifice 1) to defraud a financial institution or 2) to obtain any property owned by, or under the custody or control of a financial institution by means of false or fraudulent pretenses, representations or promises."  *United States v. Odiodio*, 244 F.3d 398, 401 (5th Cir. 2001).  Further, the financial institution must be FDIC insured, and the defendant must have placed that institution at risk of civil liability. *Id.*  Plaintiffs have not specified how any of the elements of

---

[12]    Even if plaintiffs could cure these deficiencies, they have not adequately alleged that the Grazianis violated RICO section 1962, as discussed *infra*.

bank fraud apply to the Grazianis or even explained in general terms how the Grazianis committed bank fraud.

Plaintiffs have failed to adequately allege that the Grazianis committed any predicate acts, much less the two predicate acts necessary to form a pattern of racketeering activity. Thus, plaintiffs' claims against the Grazianis under section 1962(a) and (c) must be dismissed.

ii. <u>Section 1962</u>

Even if plaintiffs did adequately allege that the Grazianis committed two predicate acts of racketeering, their allegations that the Grazianis violated section 1962(a), (c), and (d) are inadequate. Plaintiffs' RICO claims against the Grazianis must therefore be dismissed.

a. <u>Section 1962(a)</u>

Plaintiffs do not state a claim against the Grazianis, or indeed any defendants, under section 1962(a). That subsection prohibits any person from investing income derived from a pattern of racketeering activity in an enterprise. To state a claim under section 1962(a), plaintiffs must allege that they were injured by defendants' "use or investment of racketeering income." *Abraham v. Singh*, 480 F.3d 351, 356 (5th Cir. 2007)

17

(quoting *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000)).  An injury arising "solely from the predicate racketeering acts themselves is not sufficient." *Abraham*, 480 F.3d at 356 (quoting *Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 929 (5th Cir. 2002)).

Here, plaintiffs' injuries flow, albeit indirectly, from the alleged predicate acts of racketeering, not from any use or investment of racketeering income by defendants.  In fact, plaintiffs admit in their case statement that "[t]he Martins and Robinson have not alleged that they were injured by the Enterprise and its associates' reinvestment of money acquired through their racketeering activities[.]"[13]  Thus, plaintiffs have not stated a claim under section 1962(a).

b. <u>Section 1962(c)</u>

Plaintiffs have also failed to state a claim against the Grazianis under section 1962(c).  That section makes it unlawful for "any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]"  In order to meet the "conduct or

---

[13]    R. Doc. 5 at 49.

18

participate" language of the statute, a defendant must
"participate in the operation or management of the enterprise
itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).  A
defendant need not direct the affairs of an enterprise to fall
under this subsection, but the defendant must take part in its
operation or management.  *Id.* at 179; *United States v.
Posada-Rios*, 158 F.3d 832, 856 (5th Cir. 1998).  In *Reves*, the
Court noted that an enterprise may be operated or managed "not
just by upper management but also by lower rung participants in
the enterprise who are under the direction of upper management"
or "by others 'associated with' the enterprise who exert control
over it as, for example, by bribery."  507 U.S. at 184.  The
*Reves* Court went on to hold that an accounting firm that
allegedly failed to inform plaintiffs of a defendant's financial
condition did not meet this test.  *Id.* at 186.

     Plaintiffs have not adequately alleged that the Grazianis
participated in the operation or management of the purported RICO
enterprise.  Plaintiffs contend that William Magee was the
mastermind of the criminal enterprise, but they do not allege
that the Grazianis had any contact with Magee.  Rather, Magee and
the Grazianis are separated by the intermediate purchasers of the
property.  The Grazianis' only relationship with the other
purported members of the enterprise was as innocent buyers of the

19

property.  Plaintiffs assert that the Grazianis did not even learn of the title defect until they attempted to refinance their mortgage, which occurred after they bought the Martin Property. Plaintiffs allege that after the Grazianis learned of the defect, they sold the property to the Martins with full warranty of title without revealing that defect.  Further, according to plaintiffs, Mark Graziani steered the closing of the sale to Mahoney Title knowing that it would not use due diligence in performing the title examination.  These allegations, if true, may demonstrate that the Grazianis committed a separate fraud after learning that they had themselves been defrauded.  Notwithstanding their alleged subsequent fraud, the Grazianis' only association with the enterprise was as its victims.  *See Collective Federal Sav. v. Creel*, 746 F.Supp. 1307, 1309 (M.D. La. 1990) ("The purpose of RICO statutes is to reach the racketeer, not the victims.").  The allegations do not indicate that the Grazianis played any part in the operation or management of the alleged scheme to take properties from their rightful owners, and plaintiffs therefore have not stated a claim against the Grazianis under section 1962(c).

c. Section 1962(d)

20

Plaintiffs have also failed to state a claim against the Grazianis under section 1962(d), which prohibits any person from conspiring to violate subsections (a), (b), or (c).  The elements of a RICO conspiracy are "(1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendant knew of and agreed to the overall objective of the RICO offense." *United States v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir. 1998). "[B]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement."  *Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007) (quoting *Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995)).

Plaintiffs allege broadly that all of the defendants entered into an agreement to breach section 1962(c).  In particular, plaintiffs allege that "[t]here was a tacit understanding and more between the defendants that objectively manifested an agreement to participate directly, or indirectly, in the affairs of [the] enterprise through the commission of two or more predicate acts."[14]  Simply alleging the existence of an agreement, however, is not sufficient.  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), plaintiffs alleged that defendants

---

[14]     R. Doc. 1 at ¶307; *see also* R. Doc. 5 at 51 (similar allegations in RICO case statement).

made an agreement in restraint of trade or commerce in violation of the Sherman Act, 15 U.S.C. § 1.  The Court ruled that plaintiffs' complaint had to contain factual allegations "plausibly suggesting" that such an agreement was made.  *Id.* at 556-57.  Plaintiffs' "legal conclusions" that an agreement existed were insufficient, and the Court dismissed plaintiffs' claim for conspiracy in restraint of trade.  *Id.* at 564.

The facts that plaintiffs allege do not plausibly suggest that the Grazianis entered into an agreement in furtherance of a RICO conspiracy.  To the contrary, plaintiffs' allegation that the Grazianis participated in the conspiracy is distinctly implausible.  Plaintiffs do not allege that the Grazianis had any contact with Magee, and the Grazianis' only contact with any of the other members of the purported conspiracy was as innocent buyers of the property.  Further, the Grazianis did not learn of the defect in their title to the property until they later attempted to refinance their mortgage.  It simply makes no sense to suggest that the Grazianis agreed to enter the conspiracy, but found out about the title defect only after they bought the property.  Thus, plaintiffs' conspiracy claim against the Grazianis under section 1962(d) must be dismissed.

Because plaintiffs have not adequately alleged that the Grazianis committed any predicate acts of racketeering or

22

violated section 1962, plaintiffs' claims against the Grazianis
must be dismissed.

B.   *Proximate Causation as to the Remaining Defendants*

　　　With the elimination of the claims against the Grazianis,
plaintiffs have not adequately alleged proximate causation as to
the remaining defendants.  Under the proximate cause requirement,
which stems from section 1964(c), plaintiffs must show a "direct
relation" between the injury plaintiffs suffered and a RICO
predicate offense.  *Hemi Group, LLC v. City of New York*, 130
S.Ct. 983, 989 (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503
U.S. 258, 268 (1992)).  Proximate cause does not exist if the
relationship between the injury and the offense is "too remote,
purely contingent, or indirect." *Hemi Group*, 130 S.Ct. at 989
(2010) (quoting *Holmes*, 503 U.S. at 268) (internal quotation
marks and brackets removed).  Thus, a plaintiff whose injury
flows from the harm a defendant causes to a third party cannot
recover under RICO.  *Holmes*, 503 U.S. at 268-69.

　　　The Supreme Court first set out the proximate causation
requirement for RICO claims in *Holmes v. Sec. Investor Prot.
Corp.*, 503 U.S. 258 (1992).  In that case, the Securities
Investor Protection Corporation alleged that the defendant
manipulated stock in which certain broker-dealers had invested.

23

When the stock later declined, the broker-dealers were unable to meet their obligations to their customers, and SIPC had to advance funds to cover those customer's claims. *Id.* at 262-63. The Court held that even if SIPC were subrogated to the rights of the customers, "the link is too remote between the stock manipulation alleged and the customers' harm, being purely contingent on the harm suffered by the broker-dealers." *Id.* at 271. Thus, the RICO claims did not satisfy the proximate causation requirement.

In deciding that proximate causation is required in order to bring a RICO claim, the *Holmes* Court noted that Congress modeled section 1964(c) on the civil action provision of the federal antitrust laws, section 4 of the Clayton Act, which reads in relevant part:

> any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

503 U.S. at 267 (quoting 15 U.S.C. § 15). The Supreme Court set out the proximate cause requirement under the Clayton Act in *Associated General Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519 (1983). In that case, the Court noted the similarity between the effort to define "proximate cause" in the common law and "the struggle of federal judges to articulate a precise test

24

to determine whether a party injured by an antitrust violation may recover treble damages." *Id.* at 535-36.  Further, the Court had earlier ruled in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), that only overcharged direct purchasers, not subsequent indirect purchasers, may recover treble damages under section four of the Clayton Act.  *Id.* at 735-36.  Treble damages are also available under RICO, and the Court has found that the same concerns about when a plaintiff may bring suit and recover such damages under the Clayton Act inform the proximate cause determination under RICO.

Thus, relying on *Associated General Contractors*, the *Holmes* Court set out three reasons why recovery under RICO must be limited to plaintiffs who were directly injured by a defendant. First, requiring a direct relationship between the plaintiff's injury and the defendant's conduct mitigates the need to "ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors." 503 U.S. at 269 (citing *Associated General Contractors*, 459 U.S. at 542-43).  Second, the direct injury requirement means that courts are not required "to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries."  *Holmes*, 503 U.S. at 269 (citing *Associated General*

*Contractors*, 459 U.S. at 543-44).  Finally, "directly injured victims can generally be counted on to vindicate the law" without raising these concerns.  *Holmes*, 503 U.S. at 269-70 (citing *Associated General Contractors*, 459 U.S. at 541-42).  As the following cases demonstrate, courts look to these policy concerns to determine whether the proximate cause requirement is met.

The Supreme Court next considered RICO's proximate cause requirement in *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006).  In *Anza*, a steel mill products supplier allegedly failed to charge New York sales tax to cash-paying customers, which allowed it to reduce its prices and injured the plaintiff, its principal competitor.  *Id.* at 454.  The Court held that the plaintiff could not maintain its claim under section 1962(c) because the State of New York, not the plaintiff, was the direct victim of the defendant's conduct, and many independent factors could have caused the defendant to lower its prices.  *Id.* at 458. The Court further held that the plaintiff did not meet the proximate cause requirement simply by alleging that the defendant's intent was to harm the plaintiff.  *Id.* at 460-61. Rather, the "central question" is "whether the alleged violation led directly to the plaintiff's injuries."  *Id.* at 461.

The Supreme Court then found that the RICO proximate cause requirement was met in *Bridge v. Phoenix Bond & Indem. Co.*, 553

U.S. 639 (2008).  In that case, plaintiffs and defendants were bidders in yearly public auctions of tax liens held by Cook County, Illinois.  Each bidder in these auctions was required to submit bids in its own name and was prohibited from using agents or related entities to submit simultaneous bids.  Plaintiffs alleged that defendants fraudulently obtained a disproportionate share of the tax liens by entering bids in violation of the single, simultaneous bidder rule, causing plaintiffs to lose the opportunity to acquire those liens.  *Id.* at 642-46.  The Court held that plaintiffs' injury was the direct result of defendants' alleged fraud, unlike in *Holmes* and *Anza*, because no independent factors accounted for the injury, there was no risk of duplicative injuries, and no other victim was more directly injured.  *Id.* at 658.  Thus, the proximate causation requirement was satisfied.

The most recent Supreme Court decision on the topic of RICO's proximate causation requirement is *Hemi Group, LLC v. City of New York*, 130 S.Ct. 983 (2010).  Hemi Group, which sold cigarettes online, allegedly failed to provide certain customer information to the State of New York that was required by federal law.  That failure meant that the State could not pass on that information to the City of New York, which therefore could not use the information to determine which customers failed to pay

its tax on the possession of cigarettes.  *Id.* at 987.  The Court held that the proximate causation requirement was not met because the link between the defendant's alleged fraud and the harm to the City was very attenuated.  *Id.* at 990.  Further, the Court noted that the State, which also charges cigarette taxes, was better situated to seek recovery than the City.  *Id.*  The Court also ruled that "the directness of the relationship between the conduct and the harm," not the foreseeability of the harm, is the "focus" of the proximate cause analysis.  *Id.* at 991.

Based on these principles, plaintiffs' RICO claims under sections 1962(a), (c), and (d) do not meet the proximate causation requirement.  Plaintiffs discuss injuries to numerous individuals and entities in the complaint, but section 1964(c) requires that the plaintiffs' injuries be proximately caused "by reason of" the RICO violation.  Plaintiffs also purport to bring claims on behalf of "John & Jane Doe Property Owners," but they do not bring a class action, and there is no indication that they have standing to bring claims on behalf of others.  Thus, in evaluating proximate cause, the Court will look only to the injuries that the Martins and Carol Robinson allegedly suffered. Plaintiffs allege that their injuries consist of the loss of clear and merchantable title to their property, loss of value of the property because of those defects, loss of profits due to

28

inability to sell the property, mental anguish over these
property injuries, and the costs of retaining legal
representation.[15]  Plaintiffs allege that the title to their
property is defective, causing the rest of their injuries,
because the defendants fraudulently took the property from its
rightful owners, the heirs of William Nill.

Plaintiffs' losses are too remote to satisfy the proximate
cause requirement because their losses are collateral to the harm
that the defendants allegedly inflicted on the Nill heirs.
Indeed, at oral argument, plaintiffs' counsel conceded that
defendants' purpose was to take the properties from their
rightful owners, not to cause title defects.  The link between
plaintiffs' injuries and defendants' actions is not sufficiently
direct under section 1964(c) because plaintiffs' injuries are at
least one step removed from any predicate acts of racketeering or
RICO conspiracy.  The Martins were allegedly injured when they
bought the property from Mark and Kristen Graziani on January 31,
2007.  Plaintiffs name the Grazianis as defendants, but the Court
has ruled that plaintiffs have not adequately alleged that the
Grazianis committed any acts of racketeering or violated section
1962.  Under *Beck v. Prupis*, 529 U.S. 494 (2000), an overt act

---

[15]      R. Doc. 1 at ¶337.

that is part of a conspiracy under section 1962(d) can give rise
to a cause of action under section 1964(c) only if it is a
predicate act of racketeering or otherwise wrongful under RICO.
*Id.* at 505.  Plaintiffs have not adequately alleged that the
Grazianis committed any such acts of racketeering.  Further, as
discussed *supra*, plaintiffs have not adequately alleged that the
Grazianis participated in a RICO conspiracy under section
1962(d).  The Grazianis are not tied to the other defendants by a
RICO conspiracy, and there is no connection between any actions
by the Grazianis that may have proximately caused the plaintiffs'
injuries and the alleged actions of the other defendants.  *See*
*Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*,
No. 09-5619, 2010 WL 1979569, at *10-11 (N.D. Ill. May 17, 2010)
("plaintiffs may not lump together all defendants in a single
section 1962(c) claim"); *see also Bridge*, 553 U.S. at 659 (2008)
(county's actions would arguably constitute an intervening cause,
and plaintiffs may not meet the proximate cause requirement, if
county knew that bidders' statements were false but nonetheless
permitted them to participate in the tax lien auction).

Because plaintiffs have not adequately alleged that the
Grazianis committed any predicate acts of racketeering or were
part of a RICO conspiracy, plaintiffs cannot rely on the
Grazianis' actions to show proximate cause as to the remaining

defendants.  Any harm that those defendants caused the Martins
was derivative of the harm to the Grazianis, who plaintiffs
assert were innocent victims of the scheme when they purchased
the property.  Plaintiffs' alleged injuries were directly caused
by the further independent actions of the Grazianis, which did
not violate RICO.  *See Pillsbury, Madison & Sutro v. Lerner*, 31
F.3d 924, 929 (9th Cir. 1994) (no proximate cause when the
tenant's harm of increased rent flowed through the master
tenant).  The Martins therefore cannot establish proximate cause
under section 1964(c).

Likewise, Carol Robinson was allegedly injured when she
bought her property from Frank and Tonia Costa on May 5, 2008.
The Costas are not defendants in this case and are not alleged to
have committed any acts of racketeering.  According to
plaintiffs, the defendants harmed the Nill heirs, which resulted
in harm to the Costas, which resulted in harm to Robinson.  The
Supreme Court has ruled that in assessing causation of an injury
under RICO, courts should not "go beyond the first step." *Hemi
Group, LLC v. City of New York*, 130 S.Ct. 983, 989 (2010)
(quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 271-
72 (1992)).  The link between defendants' actions and plaintiffs'
injuries, however, involves multiple steps and is not
sufficiently direct.

31

The reasons for requiring a direct relationship between the plaintiffs' injury and the defendants' conduct, outlined by the Supreme Court in *Holmes*, 503 U.S. at 269, underscore the lack of proximate causation in this case.  First, plaintiffs themselves point to independent factors that led to their injuries.  One such factor is the Grazianis' alleged failure to inform plaintiffs of the title defect.  The Grazianis' silence, even if fraudulent, weighs against a finding of proximate cause because it is not an act of racketeering and was not part of the alleged RICO conspiracy.  Further, plaintiffs' title examiners and closing agents failed to spot the alleged defect before plaintiffs bought the properties.  Indeed, plaintiffs allege that Fidelity, which provided title insurance for the Martin Property and is not a defendant in this RICO case, "shielded the discovery of prior fraud like that of Magee and the Enterprise[.]"[16] Plaintiffs also suggest that Mahoney Title did not use due diligence in examining the title of the Martin Property.[17] Although plaintiffs have "reserved the right" to name Fidelity and Mahoney as defendants in this RICO action,[18] they have not

---

[16]     R. Doc. 1 at ¶86(b).

[17]     R. Doc. 71 at 2.

[18]     R. Doc. 1 at 13.

specified any predicate acts of racketeering that those entities committed, and the activities of those entities do not support a finding of proximate cause.  Rather, their alleged contributions to plaintiffs' injury are independent factors that weigh against such a finding.  Other factors may have also played a role in plaintiffs' inability to sell the property, such as the state of the broader housing market.

Additionally, the defendants injured the Nill heirs more directly than they injured the plaintiffs, and those heirs could sue the defendants for the alleged theft of their property.  As discussed in *Holmes* and the other Supreme Court decisions cited *supra*, a more directly injured victim's ability to sue is a strong indication that defendants' activities are not the proximate cause of plaintiffs' injuries.  Plaintiffs' claims are based upon the allegation that defendants stole the Nill heirs' property, and plaintiffs do not argue that the Nill heirs are incapable of suing.[19]  Further, duplicative recoveries could potentially result if both the Nill heirs and plaintiffs were to

_____

[19]     In the related matter in which the Martins are suing Fidelity, Fidelity has indicated that at least some of the Nill heirs have agreed to a settlement in which they gave up any claim to the property.  Case No. 09-4195, R. Doc. 87 at 4; R. Doc. 88, Ex. 3, Affirmative Defense ¶2.  Settling their claims is the Nill heirs' prerogative, and any such settlement does not change the fact that the plaintiffs are not the directly injured parties in this matter.

recover the full value of the properties.  These difficulties are avoided by restricting plaintiffs, whom defendants did not injure directly, from bringing suit.

Because the link between plaintiffs' injuries and defendants' acts of racketeering is indirect, plaintiffs have not met the proximate causation requirement of section 1964(c), and their RICO claims under sections 1962(a), (c), and (d) must be dismissed.

C.   *Motion to Amend*

Plaintiffs have moved for leave to file an amended complaint.[20]  In their proposed amended complaint, plaintiffs add a new property that they allege defendants fraudulently obtained from the heirs of an individual named Jules D'Hemecourt.  The D'Hemecourt heirs are not named as plaintiffs, but only as "injured parties."  Plaintiffs also name as a defendant Raymond Childress, a law partner of Magee and Devereaux who allegedly served as curator for that property.

Plaintiffs filed their motion for leave to amend after the time to amend the complaint as a matter of course under Fed. R. Civ. P. 15(a)(1) had expired.  In such circumstances, courts must

---

[20]     R. Doc. 83.

"freely give leave" to amend "when justice so requires."  *Id.*
15(a)(2).  The Court, however, may deny leave to amend when
amendment of the complaint would be futile.  *Landavazo v. Toro
Co.*, 301 Fed.Appx. 333, 336 (5th Cir. 2008).  Plaintiffs'
proposed amendment does not remedy the deficiencies in their
claims, so permitting the amendment would serve no purpose.  *See
Old Time Enterprises, Inc. v. International Coffee Corp.*, 862
F.2d 1213, 1220 (5th Cir. 1989) (denying leave to amend when
proposed amended complaint did not remedy deficient RICO
allegations).  The Court therefore DENIES plaintiffs' motion for
leave to amend.

Additionally, Andrea Smith Lampo and John George Lampo have
filed what purports to be a second amended complaint.[21]  The
Lampos are the owners of one of the properties described in the
original complaint,[22] and like the Martins and Robinson, they
allege that their title is defective because of defendants' RICO
activities.  The Lampos did not seek leave to file this
amendment, however, as required under Fed. R. Civ. P. 15(a)(2).
Therefore, at this juncture, the second amended complaint is
STRICKEN.  The Court also notes that it is unclear whether the

---

[21]    R. Doc. 119.

[22]    R. Doc. 1 at ¶231-247.

Lampos are attempting to join plaintiffs' action or to substitute for the existing plaintiffs.  It appears, however, that the Lampos' RICO claims suffer from the same deficiencies as the Martins' and Robinson's claims.  The Lampos are cautioned to read this opinion carefully before refiling their claims.

Plaintiffs also generally request leave to amend the complaint in the event that their RICO claims are defective. Such an amendment would be plaintiffs' fourth complaint, in effect, if the Lampos' complaint is counted in that tally.  Given the complaint's structural defects, which are endemic to the relationships among the parties, the success of any further attempt to amend the complaint is doubtful.  Nonetheless, the Court will allow plaintiffs twenty days to file a motion for leave to amend the complaint.


**IV.  Conclusion**

For the foregoing reasons, the Court DENIES plaintiffs' motion to amend the complaint, STRIKES the second amended complaint, GRANTS defendants' motions to dismiss, and DISMISSES this case without prejudice to plaintiffs' ability to move for leave to amend the complaint within TWENTY DAYS.

New Orleans, Louisiana, this __10th__ day of June, 2011.

_____
                SARAH S. VANCE
         UNITED STATES DISTRICT JUDGE