UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LLOYD RAYMOND MARTIN, III, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 10-2786** |
| **WILLIAM M. MAGEE, ET AL.** | **SECTION: "H" (4)** |

**ORDER**

Before the Court is a **Motion for Leave to Amend the Original Complaint as to the Claims Averred by the Martins & Robinson (R. Doc. 131)** filed by Plaintiffs Lloyd and Nicole Martin and Carol Robinson ("Plaintiffs") seeking an order from this Court granting them leave to amend their original complaint. Defendants, William M. Magee, William M. Magee, APLC, James G. Coate, Jr., and Buddy Coate, L.L.C. oppose Plaintiffs' motion. (R. Doc. 136.) Defendants Steven Wheeler Scoggin, Kimberly Russo Scoggin, and Scoggin Homes, Inc. (the "Scoggins") also oppose the motion. (R. Doc. 134.) Mary Devereux, also a Defendant, opposes the motion. (R. Doc. 132.) Finally, Defendant Charlene Ory Kazan also opposes the motion. (R. Doc. 133.) The motion was heard on the briefs on Wednesday, July 27, 2011.

**I.     Factual Summary**

Plaintiffs' lengthy complaint alleges that Defendant William Magee ("Magee") orchestrated a complex scheme to "steal" numerous pieces[1] of real estate located in St. Tammany Parish, Louisiana by filing fraudulent possessory actions in state court based on false quitclaim deeds.

---

[1] The total number of properties involved in the alleged RICO violations is fifteen. (R. Doc. 1.)

Plaintiffs filed this action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"). Plaintiffs further allege that after the properties changed hands multiple times, Plaintiffs Lloyd and Nicole Martin (the "Martins") eventually bought one of the properties.[2] Plaintiff Carol Robinson ("Robinson") also bought one of the properties.[3]

Plaintiffs allege that Defendant Mary Devereaux, alleged friend of Judge William Burris and law partner of Magee, filed a petition for declaratory judgment, which was granted after the curator, Sal Liberto, advised the Judge that he could not find any heirs to the property. Plaintiffs further allege that this fraudulent possessory action and judgment led to their injuries. Plaintiffs further allege that there is no Louisiana law that provides for the acquisition of real property in the manner done by Defendant Devereaux.

Plaintiffs complaint, however, fails to explain how the actions of Defendant Devereaux interplay with the actions of Defendants Mark and Kristen Graziani (the "Grazianis").[4] Plaintiffs proposed amended complaint largely leaves the allegations against Defendant Devereaux the same as those dismissed earlier by the District Judge, including the allegation that Defendant Devereaux used the forged quit claim deeds that were notarized by Defendant Charlene Ory Kazan, an associate with Magee's law firm.[5]

---

[2] The property purchased by the Martins is located in the Town of Abita Springs in St. Tammany Parish Louisiana. On February 14, 2001, defendant Hickory Glad Inc. A company owned and operated by William M. Magee and Karen Jean Hokanson Magee) conveyed by quitclaim deed for $10. ( R. Doc.129)

[3] A complete recitation of the facts surrounding this matter may be found in the District Judges Opinion, R.Doc. 129. The property purchased by Carol Robinson is a party of the Nill Property and was subject to the February 14, 2011 quitclaim deed and the September 13, 2002 state court judgment in favor of Magee. It is located on a party of the Nill Property ( the actual owner of the property since 1959) which Magee donated in full to the Great Commission, which was later sold to Scoggin Homes, Inc. on June 2004. ( R. Doc. 129)

[4] The Martins bought their property from the Grazianis.

[5] Kazan allegedly notarized the forged signatures of Timothy Dunaway.

The Scoggins are also property owners who owned two separate pieces of property[6] in Abita Springs who have no connection with either the Martins or Robinson. However, Magee was involved in the property they acquired. The first piece of property is described as Lots 1, 2, 3 in Square 61 in Abita Springs owned by John H. Griham since 1893. Landmark Properties, a company owned by Magee, quit claimed the properties to the Scoggins in 1996. In 1998, Landmark Properties filed a Petition for declaratory judgment claiming possession of the property for more than one year and obtained a judgment to that effect from the 22nd Judicial District Court in St. Tammany Parish.[7] Allegedly, in 2000, the Scoggins subdivided Lots 1, 2, and 3 into two lots (Lots 1-A and 3-A) and transferred Lot 3-A to Magee and transferred Lot-A to Scoggin Homes, Inc.[8] It is unclear how the Scoggins property intertwines with the Martin and Robinson properties.

The instant motion was filed in compliance with the District Judge's order granting Defendants' motions to dismiss, denying Plaintiffs' motion for leave to file an amended complaint, striking the second amended complaint[9], and dismissing Plaintiffs' claims without prejudice. (R. Doc. 129.) The Court found that Plaintiffs had not adequately alleged that (1) Defendants Mark and Kristen Graziani violated RICO; and (2) their injuries were proximately caused by the remaining Defendants' activities. (R. Doc. 129.) The Court, however, allowed Plaintiffs twenty days to file a motion for leave to amend their complaint. (R. Doc. 129.)

Plaintiffs are now before the Court again seeking to amend their complaint to cure the

---

[6]R. Doc. 57-1.

[7]R. Doc. 57-1.

[8]Id.

[9]While the Motion to Dismiss was pending the Martins and Robinson sought to amend the complaint a second time which was also denied by the District Judge's ruling of June 10, 2011. (R. Doc. 129.)

existing defects in the original complaint. Plaintiffs allege that they have discovered additional facts and obtained additional documents and probative evidence of the existence of a RICO enterprise involving the named defendants and the Grazianis.[10] They contend that these facts are sufficient to state a viable civil RICO claim such that their request for leave to amend the original complaint should be granted. Plaintiffs proposed amended complaint includes new allegations related to the Grazianis, but also re-urges the statements of fact and allegations plead in the original complaint, indexes, and narratives.[11]

Defendants William M. Magee, William M. Magee, APLC, James G. Coate, Jr., and Buddy Coate, L.L.C. ("Magee Defendants") oppose the motion on the grounds that (1) the evidence relied upon by Plaintiffs to support their request for leave to amend has been available for over a year, such that their request based on this evidence is dilatory; (2) the taped telephone conversation is only evidence of a claim against the Grazianis by the Martins, and not as against any other defendant such as Omni Bank, the Costas, Buddy Coate, Fidelity or Mahony title; and (3) the proposed amendment is futile because the purported facts are inadequate to state a RICO cause of action. The Magee Defendants therefore contend that Plaintiffs motion for leave to amend should be denied.

The Scoggins also oppose the motion on the grounds that the proposed amended complaint re-alleges all the same facts. They contend that Plaintiffs attempt to assert claims against them are futile because there are no allegations that the Scoggins were involved in the sale of Plaintiffs property. The Scoggins therefore contend that Plaintiffs' proposed amended complaint as against them should be denied.

---

[10]R. Doc. 131.

[11]R. Doc. 131, P.15.

4

Defendant Kazan also opposes the motion on the grounds that the proposed amended complaint does not cure any of the defects in the original complaint as identified earlier by the Court in its order. Defendant Kazan alleges that while Plaintiffs allege that the Grazianis violated certain criminal statutes, they still fail to allege which particular facts form the basis of the crimes that Defendant Kazan allegedly committed. Kazan contends therefore that the subject motion should be denied.

## II.  Standard of Review

Federal Rule of Civil Procedure 15(a), which governs the amendment of pleadings, provides that leave to amend pleadings "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a)(2). This, and other federal rules "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957). Thus, Rule 15(a) evinces a liberal amendment policy and a motion to amend should not be denied absent a substantial reason to do so. *See Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998).

However, leave to amend is by no means automatic. *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981). The decision to grant or deny a motion for leave to amend lies within the sound discretion of the trial court. *Id.* In exercising its discretion, the trial court may consider such factors as (1) undue delay, bad faith, or dilatory motive on the part of the movant; (2) repeated failure to cure deficiencies by amendments previously allowed; (3) undue prejudice to the opposing party by virtue of allowance of the amendment; and (4) futility of the amendment. *Gregory v Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981).

An amendment is futile when it fails to state a claim upon which relief could be granted.

*Stripling v. Jordan Production Co.*, LLC, 234 F.3d 863, 873 (5th Cir. 2000). To determine futility, the district court should apply "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* (quoting *Shane v. Fauver*, 213 F.3d 112, 115 (3rd Cir. 2000); *Miller v. RykoffSexton, Inc.,* 845 F.2d 209, 214 (9th Cir.1988).

### III.  Analysis

#### A.  The Graziani's

Plaintiffs contend that the proposed amended complaint sufficiently alleges a claim for civil RICO violations. They specifically point to the surreptitiously acquired tape recording of a conversation between Lloyd Martin and Mark Graziani, in which Graziani allegedly admits that he sold the property with unclear title and that he knew that there was a problem with the title prior to and during the sale to the Martins. In an effort to establish predicate acts, Plaintiffs's proposed amended complaint includes a listing or index of alleged predicate acts, identified by documents but without explanation.

The Graziani's did not file an opposition to Plaintiffs' motion for leave. However, each of the other remaining Defendants contend that the allegations as set forth do not cure the defects in Plaintiffs' original complaint or establish the predicate acts, as previously found in the District Judge's earlier opinion. Particularly, the Magee Defendants allege that there is nothing in Plaintiffs' proposed amended complaint that addresses the structural defects previously identified by the Court.

As noted in the District Judge's opinion dismissing this case, to allege a "pattern of racketeering activity," Plaintiffs must show that the Defendant committed two or more predicate offenses that are (1) related and (2) amount to or pose a threat of continued criminal activity.

*H.J.Inv. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 239 (1989). Predicate offenses include violations of certain state and federal laws, as set out in 18 U.S.C. § 1961(1). An association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States,* 129 S.Ct. 2237, 2244 ( 2009).

Plaintiffs continue to allege that Defendants violated 18 U.S.C. §§ 1962(a), (c), and (d). Subsection (a) prohibits any person from investing income derived from a pattern of racketeering activity in an enterprise. Subsection (c) prohibits any person employed by or associated with an enterprise from conducting or participating in the conduct of the enterprise through a pattern of racketeering activity. Subsection (d) prohibits any person from conspiring to violate subsections (a), (b), or (c). 18 U.S.C. § 1961 also itemizes all RICO predicate acts. The most common are mail fraud, extortion, obstruction of justice, obstruction of a criminal investigation, and witness tampering or retaliation.

The proposed amended complaint alleges that during a telephone conversation between Lloyd Martin and Mark Graziani, which Martin surreptitiously recorded in June 2010, Graziani allegedly admitted to knowingly selling the property to the Martins with clouded title. Attached to the Magee Defendants' opposition, however, is a copy of the complete transcript of the conversation, which they argue shows that the Plaintiffs' allegations about the conversation are not true.[12] They also contend that Plaintiffs proposed amended complaint fails to allege that Magee or any other RICO defendant actively participated in the Graziani/Martin transaction.

---

[12]For purposes of deciding whether to allow plaintiff to amend his complaint under Rule 15(a), the court does not consider the strength of the evidence at this stage. *Cashman v. Montefiore Med. Ctr.*, No. 92-4551, 1993 WL 227700, at *4 (S.D.N.Y. 1993) ("for purposes of a Rule 15(a) motion to amend, the Court cannot consider the strength of the evidence, but rather must focus only on the legal sufficiency of the allegations contained in the Proposed Amended Complaint.").

In this case, the only provision that Plaintiffs amendment could potentially establish predicate acts for is wire fraud. The elements of wire fraud are "(1) a scheme to defraud, and (2) the use of, or causing the use of, wire communications in furtherance of the scheme." *United States v.Rush,* 236 F. Appx. 944, 947 (5th Cir. 2007). The plaintiff in a complaint alleging mail and wire fraud must allege: (1) a scheme conceived for the purpose of defrauding by means of false pretenses, representations, or promises; and (2) use of the United States mail or interstate wire communications in furtherance of that scheme. *Micro-Medical Industries, Inc. v. Hatton*, 607 F. Supp. 931 (D.P.R. 1985.) A mere allegation that the Defendants used the mail or wire in connection with a fraudulent scheme would be insufficient. *Mitsubishi Aircraft Inter., Inc. v. Brady*, 780 F. 2d 1199 (5th Cir. 1986). Of significance is the legal requirement that there be false pretenses, representations or promises. In fact, reliance is an indispensable element of any civil RICO claim based on mail or wire fraud. 18 U.S.C.A. §1961 *et seq.* Here, there is no such allegation against the Grazianis.

Based upon the legal requirements for asserting wire fraud, the Court finds that the allegations by Plaintiffs are insufficient to state a claim for wire or mail fraud against the Grazianis or against any of the other RICO Defendants such that the proposed complaint is futile. *Master-Halco, Inc. v. Picard*, No. 04-0131, 2004 WL 1897015, at *1 (D. Conn. Aug. 18, 2004) (RICO claim based on mail and wire fraud dismissed where plaintiff failed to allege specific fraudulent statements). To the extent that Plaintiffs continue to seek to allege obstruction of justice and mail fraud as predicate acts by the Grazianis, the allegations remain deficient and fail to state a claim such that to permit the amendment would be futile. The complaint fails to state a cause of action for mail

fraud because there are no allegations that the mail was used by the Grazianis to execute a fraud.[13]

To the degree that plaintiffs attempt to assert a claim under 18 U.S.C. § 1951, *et seq.* ("Hobbs Act"), these additional allegations are legally insufficient because they fail to allege that the Grazianis interfered with commerce by threats or violence, rendering such a claim futile. The bank fraud allegations against Grazianis are also futile as there is no allegation that they knowingly executed a scheme to defraud a financial institution or obtain property owned by or under the custody or control of a financial institution by fraudulent means.[14] Therefore, the Plaintiffs' motion for leave to amend as to these acts and parties is Denied.

**B.     Robinson**

Plaintiff fails to set forth any allegations as to how the Grazianis' knowledge or acts impacted the Robinson property. The Court agrees with the Magee Defendants contention that the proposed amended complaint fails to allege that the Magee Defendants or any other alleged RICO Defendants knew of the sale by Frank and Tonia Costa (the "Costas") to Robinson, let alone actively participated or benefitted from the transaction.[15]

Because of the continuing lack of factual allegations linking the alleged RICO enterprise to Robinson, the Court finds that the proposed amended complaint remains defective. As the District Judge noted in her earlier opinion, the Costas are not defendants in this case and are not alleged to

---

[13] The elements of mail fraud are (1) a scheme to defraud; (2) use of mails to execute the scheme; and (3) the specific intent on the part of the defendant to defraud." *United States v. Smith*, No. 01-50218, 2002 WL1939843, at *2 (5th Cir. July 16, 2002).

[14] *United States v. Odiodio*, 244 F.3d 398, 401 (5th Cir. 2001).

[15] Plaintiff Carol Robinson bought her property from Frank and Tonia Costa. The Costas are not named as defendants in this lawsuit. Instead, Plaintiff Robinson claims that her injuries were caused by the alleged enterprise and its participants.

9

have committed any acts of racketeering. Further the indirect impact caused by the damages the Defendants allegedly caused the Nill heirs - and eventually Robinson through the trickle down theory - renders the proposed amendment futile. *Hemi Group, LLC v. City of New Your,* 130 S.Ct. 983, 989 (2011).

### C. The Scoggins

The Scoggins also state the proposed amended complaint adds no new allegations as to them. The Scoggins allege that the mortgage transaction documents for Lot 1A of Square 61 does not show that either Martin or Robinson were in the chain of title on this property such that the complaint involving this property is futile. Additionally, they contend that while Lot 1A of Square 64 does show that Robinson was the eventual purchaser of the Scoggins' home, the home was built with money the Scoggins borrowed by mortgaging the property to secure a construction loan. They contend that Plaintiffs fail to state how securing a loan to build a house amounted to fraud and sufficient predicate acts to assert a RICO conspiracy claim. Thus, the claim against them is futile.

A person commits bank fraud if he knowingly executes or attempts to execute a scheme or artifice (1) to defraud a financial institution; or (2) to obtain any property owned by, or under the custody or control of a financial institution by means of false or fraudulent pretenses, representations or promises. Plaintiffs must allege that the defendants placed the financial institution at risk of civil liability, and that the bank was FDIC insured." *United States v. Odiodio*, 244 F.3d 398, 401 (5th Cir.2001) (quoting *United States v. Sprick*, 233 F.3d 845, 852 (5th Cir.2000)).

Here, Martin and Robinson do not allege that Scoggins defrauded a financial institution. In fact, the proposed amended complaint does not set forth any allegations against the Scoggins. Instead, in the index of predicate acts, it identifies a document and suggests that the document

amounts to bank fraud. There is no description of the document or how it resulted in bank fraud. Plaintiffs fail to allege false representation to a financial institution or that the property was in the custody or control of the institution. Because "an essential element of bank fraud is 'intent to deceive a bank in order to obtain from it money or other property,'" and because the bank fraud statutes are designed to protect banks, not bank customers, Plaintiffs allegations do not state a claim for bank fraud under 18 U.S.C. § 1344. *See Bressner v. Ambroziak,* 379 F.3d 478, 482 (7th Cir.2004).

In addition, even if the circumstances surrounding the presentment by Scoggins of the loan application met the pleading requirements for a predicate act of bank fraud, there is only one such act of bank fraud asserted by Plaintiffs. An allegation of one act of bank fraud is insufficient to meet RICO's pleading requirements of predicate *acts*, much less a pattern of such acts such that the proposed amended complaint is futile as to the Scoggins.

To the extent plaintiffs allege that the submission of the loan application constitutes mail fraud and wire fraud, the proposed complaint is devoid of any allegations setting forth any facts to raise such an inference. For example, there are no allegations against the Scoggins that they falsely represented or made any promise, transmitted by mail or wire, which was relied upon by Robinson or the bank. *Mitsubishi Aircraft Inter., Inc.*, 780 F. 2d 1199. Thus, the allegations of mail and wire fraud forth set forth in the proposed amended complaint against the Scoggins are futile.

### D.     Kazan

Defendant Kazan argues that the subject motion should be denied because while Plaintiffs may have been injured by the Grazianis' actions, it was their actions only and not the other alleged RICO defendants that caused their injuries. Defendant Kazan further argues that as to Robinson's

claims, Plaintiffs fail to allege any acts by the other RICO defendants that would constitute racketeering, and that Robinson's injuries were caused by the Costas, non-parties to this action. Defendant Kazan also asserts that she is not named in the proposed amended complaint caption, and further that the limitations period has run on Plaintiffs' attempt to assert a RICO claim rendering the proposed complaint futile.

As to Defendant Kazan, Plaintiffs allege that she joined in or acted on behalf of the Magee RICO enterprise by engaging in certain conduct of the "enterprise" through a pattern of racketeering activity. Plaintiffs allege that preceding paragraphs numbers 1-118 state with particularity the claims against Defendant Kazan, and refer the Court to the taped conversation between Martin and Graziani filed in the record.

In paragraph 35 of the proposed amended complaint, Plaintiffs allege that Defendant Kazan notarized forged signature of Timothy Dunaway.[16] The remainder of the proposed amended complaint fails to set forth any additional allegations against Defendant Kazan. Most notably absent from the proposed amended complaint is any allegation that Defendant Kazan knew that the signature was forged or that Timothy Dunaway did not appear before her when she notarized his signature. For example, there are no allegations against Defendant Kazan that she knew that the signature was false and that she falsely represented or made any promise which was relied upon by the Martins or Robinson or a bank, or that Defendant Kazan transmitted anything by mail or wire. *Mitsubishi Aircraft Inter., Inc.*, 780 F. 2d 1199. Consequently, the facts as alleged do not set forth allegation for predicate acts of wire, mail or bank fraud. Thus, the claims against Defendant Kazan are futile.

---

[16]R. Doc. 131-4.

### E.  Devereaux

Defendant Devereaux also opposes the motion and contends that the proposed amended allegations against her have already been rejected by the Court, and do not state anything new. Defendant Devereaux argues Plaintiffs proposed amended complaint alleges no predicate acts as to her.  She further argues that all of the alleged newly discovered evidence, including the taped conversation, were in Plaintiffs' possession at the time the suit was filed.  Therefore, Defendant Devereaux contends that the proposed amended complaint, including those allegations concerning the taped conversation, is dilatory.

Plaintiffs allege that Defendant Devereaux was a part of the RICO enterprise because she presented a petition for declaratory judgment, which was granted after the curator, Sal Liberto, advised the judge that he could not find any heirs to the property.  According to the index of predicate acts, Defendant Devereaux is not accused of bank fraud, wire fraud or mail fraud.  Instead, her participation in the alleged enterprise is the result of filing a "false pleading and theft both state law violations."

In considering the proposed complaint, the Court notes that Plaintiffs fail to set forth any allegation setting forth what was actually false about the petition for declaratory judgment. Further it is also devoid of any allegation of what constituted the theft.  *Teamsters Nat. Freight Industry Negotiating Committee v. MME, Inc.*, 116 F.3d 1241 (8th Cir. 1997) (affirming the district court's dismissal of plaintiff's complaint for failure to allege the essential elements of mail and wire fraud and because fraud and embezzlement claims based on state law were not included in the RICO definition of racketeering).

### IV.     Conclusion

Accordingly,

**IT IS ORDERED** that Plaintiffs' **Motion for Leave to Amend the Original Complaint as to the Claims Averred by the Martins & Robinson (R. Doc. 131)** is hereby **DENIED**.

New Orleans, Louisiana, this 3rd day of November 2011.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**